## UNITED STATES v. LUSTIG et al.
No. 170, Docket 20473.

Circuit Court of Appeals, Second Circuit.
July 21, 1947.
Writ of Certiorari Denied Oct. 13, 1947.
See 68 S.Ct. 88.

Wegman, Spark & Burke, of New York City (Nathan L. Miller, J. Bertram Wegman, Richard J. Burke, and I. Maurice Wormser, all of New York City, of counsel), for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner and Frederick H. Block, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendants Henry Lustig, E. Allan Lustig and Joseph Sobel were indicted upon 23 counts, the first 22 counts for violations of 26 U.S.C.A. Int.Rev.Code, § 145(b), and the 23rd count for violation of 18 U.S.C.A. § 88, by conspiring to violate § 145(b), supra. The first 22 counts charge wilful attempts to evade and defeat income, declared value excess profits, and defense taxes for fiscal and calendar years ending during the years 1940 to 1944, inclusive, of seven corporations owned by the appellant Henry Lustig, by the filing of false returns understating gross and net income. The total net income was understated by $3,455,755.41 and the resultant tax liability by $2,872,766.-62.

The conspiracy count charges that the above defendants and two others, namely Martin Platt and Wallace Platt, who pleaded guilty, agreed to commit the offenses detailed in the preceding 22 counts; further, that they would overstate purchases by $2,-000,000 and understate sales by $1,800,000. Among the overt acts it is charged that more than $2,000,000 was withdrawn by Henry Lustig in cash; that he maintained a safe deposit box to hide currency, and that a large part of the hat check gratuities was diverted by him.

Henry Lustig, the main defendant, owned all of the stock of Henry Lustig Co., Inc., which in turn owned all of the stock of Restaurants & Patisseries Longchamps, Inc., and the latter in turn owned all of the stock of 253 Broadway Corporation, 624 Madison Avenue Corporation, Broadway and Forty-first Street Corporation, Lexington Longchamps, Inc., and Fifth Empire, Inc. In addition to being the owner he was the president and treasurer of all these corporations.

Henry Lustig Co., Inc., the top holding company, was engaged in the wholesale produce business, catering both to independent customers and to its subsidiaries. Restaurants & Patisseries Longchamps, Inc., the intermediate holding company, owned and operated a number of restaurants in the City of New York and each of its subsidiaries owned and operated a

restaurant in the City of New York. All the corporations maintained one office at 408-10 West 15th Street, New York, N.Y.

E. Allan Lustig, the nephew of Henry Lustig, was the secretary and general manager of all of the corporations. Joseph Sobel was a certified public accountant who acted as chief accountant for the corporations. He had practically no other clients and devoted his full time to the supervision of the accounts of the Lustig corporations. Martin Platt and Wallace Platt are brothers. Martin was the office manager and cashier at the main office, and he and Wallace also acted as bookkeepers for the Lustig corporations.

The three defendants were convicted by a jury on all counts and thereafter sentenced by the court. Each one of them has appealed from the judgment of conviction. It is not questioned that there was a wilful attempt on the part of the defendants to evade the payment of taxes and a conspiracy to accomplish such a result. But the conviction is attacked because of an alleged "voluntary disclosure" said to have been made under a promise of immunity. Upon this appeal the following questions are raised:

(1) Were appellants deprived of constitutional rights by the introduction of certain evidence, allegedly obtained as a result of a confession induced by promise of immunity?

(2) Did they acquire immunity by reason of the policy of the Treasury Department not to recommend prosecution of tax frauds in case the taxpayer discloses his fraud before the start of an investigation?

(3) Was relevant evidence excluded?

There can be no doubt that the information as to the understating of the income of the seven corporations, as to the overstating of purchases, the understating of sales, as to the cash withdrawals by Henry Lustig, and as to the diversion by him of hat-check gratuities could have been obtained by an examination of the books and records of the seven corporations and the records of the Federal Reserve Bank, even if the defendants had not submitted "voluntary" statements. They rely on the claim that these statements were furnished after a promise of immunity and before investigation was initiated by the government. But the trial judge found that during the period from February 28, 1945 to March 28, 1945, the defendants and corporate-taxpayers withdrew $1,800,000 in cash from the vault of Henry Lustig Co., Inc., and deposited it in some twelve bank accounts and also purchased tax anticipation warrants aggregating $800,000; that, during the period of withdrawals and deposits, employes of the banks had called the attention of the defendants and the corporate-taxpayers to the possibility that these transactions might be reported to the government; that on March 16, 1945 the transactions were reported by the Federal Reserve Bank to the Foreign Funds Control Division of the Treasury Department, and on March 24, 1945 were referred by that division to the Special Agent in Charge of the Treasury Intelligence Unit for the New York Area; that as a result of the foregoing the Special Agent accompanied by the Commissioner of Internal Revenue on March 26, 1945, called upon the officials of the Federal Reserve Bank in connection with the affairs of the defendants and the corporate-taxpayers, and Special Agents of the Intelligence Unit were designated to commence an investigation in conjunction with the Agents of the Office of Internal Revenue.

The defendants argue that their original disclosure was made when they deposited in various banks the funds they had withdrawn from the safe deposit box and were informed that such deposits might be reported to the government. It is fantastic to suppose that the making of these deposits amounted to a "voluntary disclosure" of tax deficits on the part of the defendants made to the government in response to a promise of immunity. Indeed they only slightly press this contention and mainly rely upon an alleged disclosure which they say was made to Collector Pedrick on March 26, 1945. They claim that on that date E. Allan Lustig had an appointment with Pedrick and said to him: "We * * * made some wrong returns in previous years and * * * had accumulated a large sum of money in the company vault. * * * I came to him for his advice and told him

we wanted to get square with the Government, * * * I told him the returns that were filed in February and March that year were also incorrect. * * * He said he was glad that I came in to see him about this matter because coming in to see him and telling him * * * made this thing a disclosure and he said it took the criminal aspect out of the case and made it a civil case, there might be civil penalties but there are no criminal penalties when you come in in a case of this sort." The making of such disclosure to Pedrick and the statement attributed to him in connection therewith were denied by the latter and found by the trial judge to be untrue. This finding was made not only on the testimony of Pedrick but on other corroborative evidence. The trial judge also found that the deposits of currency during the month of March 1945 were prompted by the belief that currency in bills of large denominations might in effect become contraband, and not by any desire or intention on the part of the defendants voluntarily to disclose frauds on the revenue, and that at no time prior to April 25, 1945, did the defendants disclose fraudulent practices to any government official. On the last mentioned date a meeting had taken place at Pedrick's office at which defendants' counsel had filed letters with the Collector indicating that the tax returns of the corporations understated their tax liability, without disclosing the amounts or years. They also submitted Exhibit CC, which was a typewritten memorandum of the tax deficiencies of each of the Longchamps corporations, presented by one Oestreicher, a tax expert employed by the defendants.

The defendants argue that the admissibility of corporate books, records and documents, even though it would ordinarily have been warranted, was unlawful in the present case because they were the "fruits" of a "confession" given in response to a promise of immunity. It appears from what we have already said that there was no disclosure of tax deficiencies until April 25, 1945, when Collector Pedrick referred the disclosure made on that date to McQuillan, Special Agent of the Intelligence Unit of the Bureau of Internal Revenue at New York. McQuillan testified that at a meeting on April 26 he informed Oestreicher that the government 'had been working on the case for some weeks and he was a little too late." We think it clear from the findings and the evidence which the trial judge credited that the investigation began at the latest on March 24, 1945, when the Treasury Department referred the report of the Federal Reserve Bank to the Special Agent in charge of the Treasury Intelligence Unit, New York Area.

It follows from the foregoing that the corporate records were in no sense the result of any promise of immunity. They were furnished long after the government investigation had begun.

The defendants object to the findings we have referred to on the ground that the question whether the disclosure preceded the investigation and was made under a promise of immunity was one for the jury and not for the trial judge who made the findings. This question was one of the admissibility of evidence. In Steele v. United States, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761, it was held that where property seized under a search warrant was offered in evidence against a defendant, the question whether it was admissible was one for the court, and not for the jury, and that the former should determine whether under the facts and the law there was probable cause for the issuance of the warrant under which it was seized. The same ruling in effect was made by the Supreme Court in Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. See also Ford v. United States, 273 U.S. 593, 605, 47 S.Ct. 531, 71 L.Ed. 793; Gila Valley, G. & N. Ry. Co. v. Hall, 232 U.S. 94, 103, 34 S.Ct. 229, 58 L.Ed. 521; United States v. Adelman, 2 Cir., 107 F.2d 497, 499; United States v. Bianco, 2 Cir., 96 F.2d 97, 98. It can make no difference whether the question of admissibility is directed to the fruits of an alleged unlawful search and seizure, or to any other evidence thought to be unlawfully obtained. In the case of the ordinary confession, its trustworthiness is for the jury even if the judge admits the confession. See 3 Wigmore § 861. But the defendants here do not con-

tend that the corporate books and records, which they claim to be the fruit of their disclosures, were not in themselves reliable evidence of guilt. The contention that in such cases as Lyons v. Oklahoma, 322 U.S. 596, 602, 64 S.Ct. 1208, 88 L.Ed. 1481, and Lisenba v. 'California, 314 U.S. 219, 237, 238, 62 S.Ct. 280, 86 L.Ed. 166, the Supreme Court required the jury to pass on the question of the admissibility of confessions is not borne out by those decisions, for it was only dealing with appeals from courts of states where the practice was for the jury to pass both on the admissibility and the probative value of confessions when admitted by the judge. The rules of evidence in this respect differ in different states and have no bearing on the procedure required in the federal courts by their practice or the provisions of the United States Constitution. In Wilson v. United States, 162 U.S. 613, 624, 16 S.Ct. 895, 900, 40 L.Ed. 1090, the court said in a dictum that: "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject the confession if, upon the whole evidence, they are satisfied it was not the voluntary act of the defendant." This, in our opinion, does not mean that a jury in a federal court shall pass on the admissibility of evidence, but only on its probative value. Even if the dictum be thought to refer to admissibility, it at most indicates that the question of admissibility may be left to the jury, not that it must.

The foregoing considerations in our opinion are a complete answer to the defendants' claim that their constitutional privileges were invaded.

As for the contention that the defendants received immunity under the compromise statute, it is even more illusory than the one we have already discussed based on an alleged invasion of constitutional rights. The compromise statute[1] affords no shield to one who has violated the tax laws unless there has actually been a compromise. See Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. It is not even claimed here that there was more than an offer to make a compromise. None of the formalities prescribed by the statute and treated by the Supreme Court as necessary to effect a compromise were observed. Botany Worsted Mills v. United States, supra, 278 U.S. at pages 288-289, 49 S.Ct. 129, 73 L. Ed. 379. There was no issue of fact for court or jury as to whether a contract of compromise had been made. Accordingly there is no merit in the defense of immunity.

The defendants assign error because the court refused to grant a continuance on the ground that the witness Eisner was ill. At the time Mr. Eisner had suffered a coronary thrombosis. In the circumstances the question of a continuance for the purpose of attempting to introduce testimony which, if ever attainable, would only have been cumulative to that of Allan Lustig and Oestreicher was a matter within the discretion of the trial judge.

Defendants also assign error because they were not permitted to prove that at some time after March 26, 1945, and be-

---

[1] 26 U.S.C.A. Int.Rev.Code, § 3761. "Compromises (a) Authorization.

"The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General may compromise any such case after reference to the Department of Justice for prosecution or defense.

"(b) Record.

"Whenever a compromise is made by the Commissioner in any case there shall be placed on file in the office of the Commissioner the opinion of the General Counsel for the Department of the Treasury, or of the officer acting as such, with his reasons therefor, with a statement of—

"(1) The amount of tax assessed,

"(2) The amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and

"(3) The amount actually paid in accordance with the terms of the compromise. * * *"

fore April 1, 1945, Allan Lustig requested an employee of the Lustigs to take two large packages from the novelty department of the Longchamps Restaurant to the apartment of Collector Pedrick. This testimony was offered to answer the denial of Pedrick that he had met Lustig on March 26 and informed the latter that the disclosure which Lustig claimed to have made on that date would avert criminal prosecution. Such testimony not only would not have shown that Pedrick did not tell the truth when he denied meeting Allan Lustig on March 26 but would have involved the trial of the collateral dispute as to whether Pedrick ever received or knew of the receipt of the packages. The matter was probative of no issue involved in the case and was highly collateral. We think it was properly excluded.

The correctness of the findings of fact objected to depended, so far as not already discussed, upon conflicting testimony or inferences therefrom. The findings so far as material cannot be regarded as clearly erroneous.

For the foregoing reasons the judgments of conviction are affirmed.