## UNITED STATES v. WEISMAN.

## UNITED STATES v. COLONIAL RUBBER CO., Inc., et al.
### Cr. Nos. 17966, 17967.

District Court, D. Massachusetts.
July 20, 1948.

William T. McCarthy, U. S. Atty. and Joseph M. Hargedon, Asst. U. S. Atty., both of Boston, Mass., and Arthur Garrity, Asst. U. S. Atty., of Worcester, Mass., for plaintiff.

Joseph J. Gottlieb and Sydney Berkman, both of Boston, Mass., for defendants.

FORD, District Judge.

The individual defendant Weisman and the corporate defendant were indicted March 15, 1948, for attempting to defeat and evade taxes due the United States. 26 U.S.C.A.Int.Rev.Code, § 145(b).

On April 23, 1948, the individual defendant and the corporation filed motions to suppress evidence obtained by the government from statements by defendant Weisman and from the books of the corporate defendant made available to the government by Weisman with respect to attempted tax evasion. The present indictments are based at least in part upon this evidence.

The contentions made to support the motions are as follows: (1) defendant Weisman contends he made a confession of attempted evasion that was induced by a promise of immunity by one Fred Pastore, Special Agent of the Bureau of Internal Revenue; and also by the general policy of the Treasury Department to grant immunity to those making a voluntary disclosure before investigation; (2) defendant corporation contends that the production of its corporate records to the agent was the result or fruits of a promise of immunity given to Weisman by Agent Pastore; and also by the general policy of the Treasury Department to grant immunity to those making a voluntary disclosure before investigation. No attack on the indictments is made in the proceeding. In other words, an evidential problem is presented here, not an immunity defense in bar of the indictments.

The contentions made are identical with those made on somewhat similar facts in the case of United States v. Lustig, 2 Cir., 163 F.2d 85.

A hearing on the motions was held on Wednesday, June 9, 1948, testimony was taken, and the following findings of fact are made by this court.

On or about August 29, 1945, Fred Pastore, Special Agent of the Bureau of Internal Revenue, visited the defendant at his corporate place of business in Cambridge, Massachusetts. For some time before that date a special agent of the Bureau of Internal Revenue in Florida was investigating a third party, one Max Leitman, and he discovered the fact that Leitman had paid more than $12,300 in checks to the defendant Benjamin Weisman and the Colonial Fabric Company, a dissolved corporation controlled by Weisman. A check payable to Colonial Fabric Company was in the amount of $12,300.

At the time Agent Pastore visited the defendant on August 29, the defendant stated at the outset that the checks represented payments of personal loans made by Weisman to Leitman. After a discussion lasting for about one-half hour, Weisman volunteered the statement that he could not tell a lie and admitted that the $12,300 check was in payment for the sale of tire reliners to Leitman. Subsequently, after a request from Pastore, Weisman turned over the cash receipt books and sales books of the Colonial Rubber Company to Pastore for examination. This was done voluntarily. The agent asked Weisman to write out an affidavit stating the nature of the transactions he had with Leitman. The affidavit was prepared by the agent, read by Weisman, and signed by him. Agent Pastore received information from Weisman as to the banks used by Weisman in making deposits. Weisman informed the agent that he had accounts in three banks and at that time stated he had no bank accounts other than those stated. After further investigation, Agent Pastore discovered that Weisman did have an account at the United States Trust Company, in which Weisman had deposited the proceeds of other unrecorded sales. At a later conference, after denying at first that this was the fact, Weisman admitted he had such an account in the United States Trust Company. Also later Weisman disclosed another account in the Harvard Trust Company.

After several weeks investigation of the books of the Colonial Rubber Company, defendant, many unrecorded sales were

discovered which led to the indictments against Weisman and the corporation.

Weisman testified, in substance, that when the agent visited him, the latter told him he was investigating a third party and that if the defendant had any disclosure to make, he would take it, recompute the tax, assess the penalty, and that would end the matter; that there would be no criminal prosecution. Weisman testified that it was as a result of this promise of immunity and the general policy of the Treasury Department in granting immunity that he made a disclosure of tax delinquencies and produced the books of the corporation, of which he was treasurer and principal stockholder.

Weisman's wife testified that she assisted her husband and the defendant corporation in taking care of the checkbooks and that on or about September 2, 1945, she was present at the plant of the corporate defendant for the purpose of explaining certain bookkeeping entries to Special Agent Pastore and that at that time, upon being asked certain questions, Agent Pastore stated that he had made a deal with her husband and that nothing was going to happen to him.

One Sidney L. Kirshner, an accountant for Weisman, testified but did not give any testimony that Agent Pastore had promised immunity for Weisman's disclosure.

Agent Pastore denied categorically that he had at any time assured Weisman that if he disclosed all his dealings and irregularities, the result would be monetary penalties. He denied that he promised any immunity to the defendant or to the corporation through the defendant in return for any disclosures of tax delinquencies. He testified, and I find it to be a fact, that Weisman made his "confession" after making a statement when confronted with the Leitman checks that he could not tell a lie. I find he voluntarily made his "confession" and voluntarily turned over the corporate records after he knew it was useless to attempt further to conceal the true facts. I find it to be a fact that at no time did the Special Agent of the Bureau of Internal Revenue promise any immunity to the individual defendant or through him to the corporate defendant in return for the defendant's statements admitting attempted tax evasions or for the production of corporate records.

Agent Twohey, who also examined Colonial Rubber's books and records at various times at the company's office, heard nothing said by Weisman that indicated he had a promise of immunity from any one.

The credibility of Weisman in this connection was by no means impressive. I find also he attempted to conceal check accounts in certain banks. Pastore testified, and I find it to be true, that when Weisman signed the affidavit reflecting irregularities he was told by Pastore that he did not have to incriminate himself. Weisman signed the affidavit without any promise from Pastore of any sort. I also find as a fact that when Pastore visited Weisman on August 29, 1945, he did not tell Weisman that his visit related solely to Max Leitman.

I find that at the time the defendant Weisman made his disclosures to the government and consented to Pastore's examination of the corporate records, it was the policy of the Treasury Department of the United States, and Weisman knew of it, not to prosecute taxpayers who voluntarily disclosed wrongdoings to the Treasury Department prior to investigation.

Also, this court further finds that when the defendant Weisman made the statements as to his transactions and when the books and records of the corporation were produced by him, the investigation with respect to Weisman's and the corporation's attempted tax evasion had begun. The special agent in Florida was already on Weisman's and the corporation's trail before Weisman made any disclosure. The department knew Weisman or the Colonial Fabric Company, a dissolved corporation which Weisman controlled, had received more that $12,000 in checks from Leitman, payable to Weisman or the Colonial Fabric Company, a defunct corporation controlled by Weisman. Leitman was suspect and although the government at that time was not in possession of sufficient facts to show Weisman was involved, yet it had in its possession facts and documents (checks)

that actually did involve him and the corporate defendant. The trail finally led to Weisman and it cannot be said that when the knowledge came to the department that Weisman and Leitman were doing business, the investigation with respect to Weisman and the Colonial Rubber Company had not begun. The authorities had evidence; they were investigating it, but had not yet caught up to their man. It would be stretching it a little to say, because they were not investigating Weisman, per se, the investigation had not begun. This would be too narrow a construction of "investigation". It cannot be denied they were investigating the transactions which were involved in Weisman's alleged tax evasion. That is enough; the "investigation" had begun and because it had begun, Weisman confessed.

■ Further, I find Weisman would never have made a disclosure to the Internal Revenue Agent unless he knew the government was actually on his trail. He did not go to the government; the government came to him with the evidence of his alleged misdoings in its possession. He knew if he made no disclosure that his tax delinquency would be exposed from the corporate books which the government could have obtained and used as evidence without violating the Fifth Amendment. He merely "beat the government to it." His statements were induced by a desire to help himself as best he could. It is fairly inferable from the facts that he did not expect immunity at that stage. He was not even under an erroneous impression that he could secure immunity notwithstanding the fact that the investigation had begun. He knew better. What he was trying to do was to court favor.

■ I find that any confession or statements Weisman made to the agent were not induced by any policy of the Treasury Department. As stated in the preceding paragraph, this consideration was not the motivating influence for his "confession". In fact, the investigation having begun, there was no outstanding promise by the Treasury Department that induced Weisman to confess. The promise or inducement to confess, assuming the policy of the Treasury Department is construed as such, was a promise not to prosecute if the disclosure was made before the investigation had begun, not after. No promise existed after the investigation had begun upon which to predicate a finding that Weisman or the corporation was compelled to incriminate themselves in violation of the Fifth Amendment.

## Conclusions of Law.

■ The statements made by defendant Weisman to the Special Agent of the Bureau of Internal Revenue were not obtained by the government on the basis of any promise of immunity by any person in authority with the government.

■ The corporation records were not the fruits or result of any promise of immunity.

The corporate records were not procured as the result of any violation of the Fourth Amendment.

■ The statements of Weisman were made and the corporate books and records were furnished after the investigation with respect to attempted tax evasion by both had begun.

Weisman's confession was not a "voluntary disclosure" within the meaning of the Treasury Department's promise of immunity.

■ The statements of Weisman made to the agent were not induced by any policy of the Treasury Department.

The defendant Weisman and the corporate defendant were not compelled to incriminate themselves in contravention of the Fifth Amendment to the Constitution. There was no inducement within the meaning of this Amendment by any one in authority that compelled Weisman or the corporation to furnish evidence against themselves.

The motions to suppress the evidence with respect to both defendants are denied.[1]

---

[1] There is no necessity of discussing the point whether a confession may be attacked after indictment has been returned. See In re Fried, 2 Cir., 161 F. 2d 453; 60 Harv.L.R. 1145; 56 Yale L.J. 1076.