**In re LIEBSTER.**

**No. 1373.**

United States District Court
E. D. Pennsylvania.

June 16, 1950.

Leonard J. Schwartz and Daniel Lowenthal, both of Philadelphia, Pa., for petitioner.

Gerald A. Gleeson, U. S. Atty., and James C. Bowen, Asst. U. S. Atty., both of Philadelphia, Pa., and Meyer Rothwacks, Sp. Asst. to Atty. Gen., of Washington, D. C., for the United States.

WELSH, District Judge.

On March 15, 1950, pursuant to a complaint filed by the United States Attorney with the United States Commissioner charging the petitioner with violation of the Internal Revenue Code, 26 U.S.C.A. § 1 et seq., in the filing of income tax returns for the years 1943 and 1944, the petitioner was held for action by the Federal Grand Jury. The United States Attorney has declared his intention to present evidence to the Grand Jury to obtain an indictment of the petitioner for the alleged violation. To prevent the United States Attorney from presenting the evidence and sworn statement allegedly obtained from the petitioner in January, 1947, and on June 5, 1947, respectively in derogation of his rights under the Fifth Amendment to the Constitution,[1] the instant petition to suppress was filed.

### Findings of Fact.

1. On August 21, 1945, the then Secretary of the Treasury, Hon. Fred M. Vinson, reaffirmed what had been for many years the announced policy of the Treasury Department of the United States, not to recommend criminal prosecution against any taxpayer who voluntarily discloses income omitted from tax returns prior to the initiation of an investigation by the Department.

2. The federal income tax returns filed by the petitioner, Abe H. Liebster, for the calendar years 1943 and 1944 omitted part of the net income from M. and M. Knitting Mills, in which petitioner was a partner.

3. On November 19, 1945, Special Agent C. C. Davis was formally and specifically assigned to the tax inquiry concerning the petitioner, Abe H. Liebster, by document normally used in the assignment of agents to particular cases.

4. On the following day, November 20, 1945, a letter entitled "in the matter of M. and M. Knitting Mills (Abe H. Liebster)" was dispatched by A. W. Fleming, Special Agent in Charge of the Intelligence Unit of the Treasury Department at Philadelphia to Francis R. Smith, Collector of Internal Revenue, Philadelphia, requesting the original returns of the named taxpayer for the years 1943 and 1944.

5. On December 11, 1945, Special Agent Davis made inquiry at D. F. Waters Sons, Inc., Philadelphia, Pa., regarding certain transactions entered into between the petitioner, Abe H. Liebster, and that company.

6. On January 15, 1946, Special Agent Davis called upon petitioner (M. and M. Knitting Mills) and asked the petitioner for the name of the person to whom petitioner's company sold its waste and whether the M. and M. Knitting Mills had transacted any business with certain five named companies. Petitioner advised Davis that his company had transacted no business with three of the named companies, that he had never heard of the fourth company, that his company had regularly sold merchandise to the fifth company, S. Aptekar of New York, and that his company had sold its waste to one Max Kapustin of Philadelphia. Davis then obtained permission to examine the Kapustin and Aptekar ac-

---

[1] "No person * * * shall be compelled in any Criminal Case to be a witness against himself * * *".

counts and after making notes thanked petitioner for his cooperation and left the premises.

7. On January 22, 1946, a letter was transmitted by the Special Agent in Charge in Philadelphia to the Intelligence Unit's Special Agent in Charge in New York requesting an investigation of transactions between the aforementioned S. Aptekar and the petitioner, Abe H. Liebster.

8. On February 3, 1946, petitioner advised the Collector of Internal Revenue at Philadelphia by letter that he would file amended returns for the taxable years 1943 and 1944. On February 11, 1946, he did so file amended returns for those years. The amended returns reported substantially the net income which had been omitted from the original returns, and the additional tax thereon, with interest, was paid by petitioner.

9. The petitioner at the time he filed the amended returns knew of the Treasury Department's policy to grant immunity from criminal prosecution to taxpayers making voluntary disclosures prior to the initiation of an investigation by the Treasury Department. He had read Secretary Vinson's statement and discussions thereon in newspapers and periodicals. He had consulted with his accountant, David Levin, and his attorney, Llewellyn A. Luce, who again brought to petitioner's attention the public statements of Treasury officials promising immunity to taxpayers making voluntary disclosures before the commencement of an investigation.

10. Petitioner when he filed his amended returns had no knowledge, constructive or otherwise, that he was under investigation. He believed he was making a voluntary disclosure within the meaning of the announced policy of the Treasury Department and was so advised by his attorney, Llewellyn A. Luce, who had been informed of all facts known to the petitioner and who believed petitioner would receive immunity from criminal prosecution.

11. In June, 1946, the M. and M. Knitting Mills' and petitioner's original and amended returns were assigned to Internal Revenue Agent, Reuben Feinberg, for examination. On July 24, 1946, he called upon the petitioner at the M. and M. Knitting Mills for the purpose of making an examination. Upon discovering he was personally acquainted with petitioner's partner, Harry Myers, Feinberg without having conducted an examination withdrew from the case.

12. During January, 1947, petitioner's attorney and accountant conferred with Special Agent Davis and Revenue Agent Remstein. Davis asked for permission to examine petitioner's partnership books, accounts, records and memoranda. The attorney stated to Davis and Remstein that the petitioner had made a voluntary disclosure and that he had advised the petitioner that in order to fully complete his voluntary disclosure it was necessary to cooperate and to furnish all evidence and statements requested by the agents. He then stated to the agents that he was turning over the books, etc., of the petitioner to fully complete petitioner's voluntary disclosure. Thereupon, the books, etc., were turned over to the agents and said agents examined them.

13. On June 5, 1947, petitioner and his attorney conferred with agents Davis and Remstein. Said agents requested petitioner's statement under oath. The petitioner at that time was advised by his attorney, in the presence of Davis and Remstein, that such a statement was necessary to complete petitioner's voluntary disclosure. Petitioner's attorney then informed Davis and Remstein that petitioner was prepared to give the statement to complete the voluntary disclosure which petitioner had made. Thereupon, the agents took petitioner's statement under oath.

14. The Treasury Department's policy of granting immunity in cases of voluntary disclosures induced petitioner's attorney to turn over the partnership books, etc., and petitioner to give a statement under oath; and petitioner and his attorney believed petitioner would receive immunity from criminal prosecution and agents Davis and Remstein were so informed.

15. In December, 1947, petitioner's attorney learned for the first time that criminal prosecution had been recommended by the Philadelphia Intelligence Office of

the Treasury Department on the ground that an investigation had been initiated before the filing of the amended returns by petitioner on February 11, 1946.

16. In the fall of 1948, petitioner's attorney learned for the first time that the assignment of petitioner's returns to agent Davis for investigation in an interdepartmental communication on November 19, 1945, was considered the event which initiated the investigation.

From the above stated facts we reach the following

## Conclusions of Law.

1. To be entitled to immunity within the meaning of the announced policy of the Treasury Department a person must make a voluntary disclosure before the initiation of an investigation.

2. From the facts as above stated there had been no initiation of an investigation within the meaning of the announced policy of the Treasury Department, known to the petitioner.

3. When petitioner filed his amended return he did not know an investigation had been initiated, nor did he have any reasonable grounds to believe that such investigation had been initiated.

4. Petitioner's voluntary disclosure of February 11, 1946 was influenced and induced by the promise of immunity as contained in the announced policy of the Treasury Department.

5. The evidence and sworn statement given by the petitioner were also induced and influenced by said promise of immunity.

6. The evidence and sworn statement obtained by the agents from the petitioner in January 1947 and on June 5, 1947, respectively should be suppressed on the ground that if used petitioner's rights under the Fifth Amendment to the Constitution would be violated.

7. The petition to suppress the evidence is accordingly granted.

An order pursuant to the foregoing opinion will be entered.