**Application of HENRY LUSTIG CO., Inc., et al.**

**UNITED STATES v. LUSTIG et al.**

District Court, S. D. New York.
June 24, 1946.

Boris Kostelanetz and Louis Bender, Asst. U. S. Attys., all of New York City, for the United States.

Lloyd Paul Stryker, J. Bertram and Richard J. Burke, all of New York City, for Lustigs.

Robert J. Fitzsimmons and Samuel E. Miller, both of New York City, for Sobel.

David Jacobs, of New York City, for defendants Martin and Wallace Platt.

KENNEDY, District Judge.

The defendants in the cause, United States v. Henry Lustig et al., and the corporate taxpayers above described, having moved by notice of motion dated March 19, 1946, for an order suppressing certain evidence in said motion papers more fully described, and for incidental relief more fully set forth in the said motion papers and said motion having by order dated April 26, 1946, been referred to the undersigned for decision now, on reading and filing the said motion papers, and the affidavits in support thereof and after due deliberation I make the following findings of fact and draw the following conclusions of law.

### Findings of Fact.

1. At all times between 1934 and the date of the trial of this cause the Treasury Department of the United States had a settled policy to the effect that any taxpayer, even one guilty of fraud, who voluntarily disclosed wrongdoing to the Treasury Department prior to investigation would not be prosecuted. This policy was publicized by various important Treasury officials during the period mentioned.

2. At all times between March 15, 1941, and December 6, 1945, the date of the in-

dictment herein, defendant Henry Lustig was President and Treasurer of seven corporations engaged directly or indirectly in the operation of restaurants in the Borough of Manhattan, City of New York. Defendant, E. Allan Lustig, was Secretary of these corporations, and defendant Joseph Sobel, a Certified Public Accountant, was the accountant for the same companies. The corporations, which will hereafter be called the corporate taxpayers, were respectively 253 Broadway Corporation, Broadway & 41st Street Corporation, 624 Madison Avenue Corporation, Fifth Empire, Inc., Lexington Longchamps Inc., Restaurants & Patisseries Longchamps, Inc., and Henry Lustig Co., Inc. The stock of Henry Lustig Co., Inc., was owned entirely by defendant Henry Lustig, and that corporation in turn owned and controlled all of the stock of Restaurants & Patisseries Longchamps, Inc., which last named corporation in turn owned all of the stock of the five other named corporations.

3. Between March 15, 1941, and March 15, 1945, there were filed on behalf of the corporate taxpayers false and fraudulent returns of income, in that during the dates mentioned the defendants procured the corporate taxpayers at first grossly to overstate purchases, and later grossly to overstate purchases and understate sales, with the result that for the fiscal years covered by returns filed from March 15, 1941, to March 15, 1945, for said corporate taxpayers the government was defrauded of taxes in an amount exceeding $2,800,000 less adjustments that would result from the correction of these fraudulent accounting figures, and subject to a claim by the corporate taxpayers of additional purchases during the period mentioned aggregating some $900,000, all of which were made in cash, were not supported by any vouchers, and were not reflected in their books.

4. As a direct result of the fraudulent practices herein above described defendant Henry Lustig and the corporate taxpayers had accumulated an amount of currency exceeding in amount $1,800,000, which said currency was in bills of large denominations principally $500 and $1,000 and kept in a vault rented by Henry Lustig Co., Inc.

5. During the months of January and February 1945 the defendants and the corporate taxpayers became apprehensive that the currency might become difficult to dispose of, or even useless, because of rumors that the government intended to enact statutes or regulations calculated to bring hoarded currency out of hiding, and to take measures by which persons disposing of currency in large amounts could be indentified and traced.

6. During the period February 28, 1945 to March 28, 1945, defendants and corporate taxpayers withdrew the currency herein above described from the vault of Henry Lustig Co., Inc. and deposited the same in some 12 accounts, some old, some new, some corporate, some personal, and also purchased tax anticipation warrants aggregating in excess of $800,000.

7. During the period of said withdrawals and deposits attention of the defendants and of the corporate taxpayers was specifically drawn by employees of banks of deposit to the possibility that these transactions might be reported to the government.

8. In fact the transactions herein above referred to were reported by the Federal Reserve Bank to the Foreign Funds Control Division of the Treasury Department on March 16, 1945 and were by that division on March 24, 1945, referred to the Special Agent in Charge of the Treasury Intelligence Unit for the New York area. As a result of this report and of telephone conversations with his superiors the Special Agent in Charge accompanied by the Commissioner of Internal Revenue called upon the officials of the Federal Reserve Bank on March 26, 1945 in connection with the affairs of the defendants and of the corporate taxpayers, and Special Agents of the Intelligence Unit were designated to commence an investigation in conjunction with agents of the Office of the Internal Revenue in Charge.

9. On March 27, 1945, William J. Pedrick, Collector for the First Collection District, was notified in writing by the Special Agent to secure and forward the returns of defendant Henry Lustig and of the corporate taxpayers.

10. On April 10, 1945, defendant E. Allan Lustig visited Collector Pedrick at an office conducted by the latter in the Empire State Building, Manhattan, New York, and asked the Collector whether he knew anything about a rumor appearing in the Daily News, a newspaper, on April 9, 1945 to the effect that a chain of restaurateurs was then under investigation. Collector Pedrick answered truthfully that he knew nothing about it.

11. On April 12, 1945, defendant E. Allan Lustig again called on Collector Pedrick and delivered a check of one of the corporate taxpayers to a charitable enterprise with which Collector Pedrick was associated.

12. On April 19, 1945, Internal Revenue Agent Diehl communicated by telephone with defendant Sobel and advised the latter that he desired to make an inspection of the books of Henry Lustig for the purpose of checking tax returns. At this time Sobel knew, as did the other defendants and corporate taxpayers, that any such investigation would or might disclose the fraudulent practices theretofore carried on by the corporate taxpayers in connection with their income tax returns. Defendant Sobel suggested to agent Diehl that an examination be deferred to April 23, 1945.

13. On April 20, 1945, defendant E. Allan Lustig made inquiries at the office of Collector Pedrick concerning the telephone call from Internal Revenue Agent Diehl, and Collector Pedrick answered truthfully that this was not a matter within his jurisdiction and that he knew nothing about it. On the same day the defendant consulted with Mr. Mark Eisner, an attorney, and Mr. Sylvan Oestreicher, a tax consultant, both associated with the law firm of Olvany, Eisner & Donnelly.

14. On April 24, 1945, said Oestreicher succeeded in reaching by telephone Commissioner of Internal Revenue Joseph D. Nunan, Jr. Oestreicher stated that he intended to make a voluntary disclosure, without mentioning the taxpayers involved, and was instructed by the Commissioner to make the disclosure to Collector Pedrick. On the same evening Oestreicher called

Collector Pedrick and arranged for an appointment on the following day. On April 25, 1945 Messrs. Eisner, Oestreicher and E. Allan Lustig called upon Collector Pedrick. They had in their possession and delivered to the Collector eight certain letters, one referring to the tax returns of Henry Lustig and the other seven relating to the affairs of the corporate taxpayers. The tenor of these letters was that the returns theretofore filed were "incorrect", that the defendant Henry Lustig and the corporate taxpayers wished to make a "voluntary disclosure", and that in connection with this an examination of their books and records could be made by government officials. On April 25, 1945, the extent of the frauds practiced by the corporate taxpayers was not disclosed. Collector Pedrick immediately referred the letters herein mentioned to the Special Agent in charge of the Intelligence Unit, who already was and since March 24, 1945, had been engaged in an investigation prompted by the suspicious deposits made during the month of March, 1945.

15. On April 26, 1945, at the suggestion of Collector Pedrick, Messrs. Eisner and Oestreicher called upon Special Agent McQuillan, then in charge of the Intelligence Unit, and reported to him their conversation with Collector Pedrick. These representatives of the defendants and of the corporate taxpayers were then and there advised by the said Special Agent that the "disclosure" was not made prior to investigation, and that an investigation had been underway for some weeks.

16. Between May 15, 1945, and August 17, 1945, Special Agents and Internal Revenue Agents examined the books and records of the defendants, and from time to time during this examination developed a number of facts not touched upon in the letters of April 25, 1945, including the fact that defendant Henry Lustig had systematically taken large amounts of cash arising from fees received by the corporate taxpayers in coat rooms conducted by them, and that the defendants had procured the corporate taxpayers to understate their income from this source in substantial amounts.

17. On June 4, 1945, a grand jury subpoena was served upon the corporate taxpayers with the object of impounding the corporate books, and on the following day the defendants procured the corporate taxpayers to forward to Collector Pedrick an amount in excess of $1,800,000 as part payment of taxes defrauded which said amount was placed in a miscellaneous or suspense account, since the Treasury Department had not yet determined the precise amount due and owing by the corporate taxpayers.

18. Neither the defendants nor the corporate taxpayers at any time prior to April 25, 1945, disclosed the fraudulent practices of the corporate taxpayers to any government official, although on this motion sworn affidavits were submitted to the effect that "voluntary disclosure" was discussed between E. Allan Lustig and Collector Pedrick on March 26, 1945, April 10, 1945, April 20, 1945, and April 24, 1945. I find as a fact that all of these statements are false.

19. The redeposits of currency during the month of March 1945 which the defendants procured the corporate taxpayers to make were prompted by the belief that currency in bills of large denominations might in effect become contraband and not by any desire or intention voluntarily to disclose frauds on the revenue. At no time between February 28, 1945, and April 25, 1945, was any act of the defendants or of the corporate taxpayers prompted or brought about by any inducement held out to them by any person in authority or any person connected with the government. The disclosure of April 25, 1945, was prompted solely by the fact that the defendants and the corporate taxpayers knew that an investigation of their affairs had begun and that an Internal Revenue Agent had made an appointment, deferred at the request of the defendants and of the corporate taxpayers, to commence an examination of the books of defendant Henry Lustig on April 23, 1945.

20. At no time between February 28, 1945, and April 25, 1945, were the defendants or the corporate taxpayers coerced or compelled or induced, either with or without process, to make incriminatory disclosures.

21. The examination of the books of the corporate taxpayers conducted between May 15, 1945, and August 17, 1945, was invited by the defendants and by the corporate taxpayers with full knowledge that an investigation had been commenced which would lead to the discovery of fraudulent entries in the books of the corporate taxpayers, and with full knowledge of the fact that said investigation could be commenced and continued with or without the consent of the defendants or the corporate taxpayers.

22. The invitation to government authorities to examine the books of the corporate taxpayers contained in the letters of April 25, 1945 was not procured or produced by force, fraud, stealth, trick, device, or any improper means on the part of government agents and was not in fact an unreasonable search or seizure. At all times between 1934 and 1945 it was the announced policy of the Treasury Department to refrain from recommending prosecution in cases where taxpayers made voluntary disclosures of wrongdoing before investigation had been begun. The letters handed to the Collector on April 25, 1945, in behalf of the corporate taxpayers were not frank and full disclosures, were not voluntarily made, and were delivered at a time when the defendants well knew that an investigation of their affairs and those of the corporate taxpayers had actually been initiated.

23. The belated and partial revelations made by the defendants and the corporate taxpayers to government officials commencing on April 25, 1945 were induced and brought about solely because the defendants and the corporate taxpayers, feeling that some government action with respect to hoarded currency in bills of large denominations was imminent, had been compelled to redeposit said currency and knew that said redeposits would in turn lead to the discovery of the frauds practiced on the revenue by the corporate taxpayers.

24. In fact, the defendants and the corporate taxpayers after a substantial amount of currency had been redeposited, to wit

on March 15, 1945, caused to be filed two additional fraudulent tax returns, one in behalf of Restaurants & Patisseries Longchamps, Inc. wherein the corporate income was understated in an amount exceeding $680,000 and one in behalf of Henry Lustig Co., Inc., wherein the corporate income was understated in the amount of approximately $19,000, the filing of which false returns conclusively establish that the redeposit of currency was no evidence of any intention on the part of the defendants or the corporate taxpayers to make voluntary disclosure of the frauds theretofore practiced, and that said redeposits had no connection with or bearing upon crimes against the revenue.

### Conclusions of Law.

1. The books, records and documents of the defendants and the corporate taxpayers made available to the government in their offer of April 25, 1945, examination of which was actually commenced on March 15, 1945, are not confessions.

2. Said corporate records, books and documents of the defendants and of the corporate taxpayers were not produced as a result of any inducement, even slight, held out to the defendants or the corporate taxpayers by any person in authority or person connected with the government.

3. The books, records and documents of the corporate taxpayers were at all times between 1940 and 1946 affected by a public interest since they had a direct bearing on fraudulent tax returns filed by the said corporate taxpayers.

4. The defendants and the corporate taxpayers were not compelled to incriminate themselves in violation of the Constitution by the production for examination by Internal Revenue Agents of the records, books and documents referred to.

5. Said records, books and documents were not obtained by government agents in the course of an unreasonable search or seizure, or by force, fraud, stealth, trick or device, or improper means of any kind.

6. The defendants are not entitled to assert any constitutional privilege or protection which denies the government the right to use against them the books, records and documents obtained from or delivered by the corporate taxpayers.

7. No finding of fact or conclusion of law contained herein is affected by any due process requirement of the Constitution, nor has due process been denied to or withheld from the defendants or the corporate taxpayers.

8. The motion to suppress evidence is denied in its entirety.