BRISTER *v.* STATE.

Division B. Apr. 9, 1951.

No. 37874 (51 So. (2d) 759)

366

Tighe & Barksdale, Will S. Wells and Aline J. Collum, for appellant.·

Joe T. Patterson, Assistant Attorney General, for appellee.

Hall, J.

Appellant was convicted on a charge of embezzlement and sentenced to serve three years in the penitentiary. She was cashier of the State Tax Commission for more than fourteen years; during all of that time until August 1949 all collections of taxes, including payments in cash, were handled in her office; after that date the system was changed so that she no longer handled the cash collections except in three small separate funds. Prior to April 1, 1950, discrepancies were discovered, and, with the consent of the State Auditor and Governor, the Chairman of the State Tax Commission employed Dick D. Quin, a Certified Public Accountant, to investigate these discrepancies. He began by going to each of the banks in Jackson and making up a complete list of the items composing each deposit; these items were compared with the report of each deposit as filed by the cashier with the chief accountant's office of the State Tax Commission and it was found that checks used in making up the deposit were from persons not listed on said report; this comparison of the actual deposits in the banks with the report to the chief accountant continued for a period of two weeks and it was found that the same discrepancies, with but a few exceptions, appeared throughout this period. All deposit slips during this investigation were in appellant's handwriting.

Mr. Quin then reported this situation to the Chairman of the State Tax Commission, and, in the presence of Mr. Quin and others, he called appellant into his office and advised her that some irregularities had been discovered concerning which they desired information; he also ad-

vised her that Mr. Quin had been employed and had made an investigation and inquired whether she would rather talk with all present or with Mr. Quin alone. She signified that she preferred to talk with Mr. Quin alone and all the others left the room. She asked Mr. Quin "What have you found?" He advised her the result of his investigation up to that time and stated to her that it was apparent that someone had been detaching remittances from tax returns and had been holding out the returns and crediting the detached remittances on the returns of other taxpayers to cover a prior shortage. He then stated to her, "I would appreciate your cooperation, and I would like your help in this, and I want to tell you that it will make it much easier for you and it will make it much easier for all of us in completing and conducting this audit if you will cooperate with me and tell me the truth about these matters." He then asked her where were the returns that had been held out, and she told him they were all in the middle drawer of her office desk. He also asked her if anyone else was involved in the shortage and she replied "I and I alone am responsible for it." Appellant produced about 78 tax returns aggregating a shortage of over $19,000.00 which were duly scheduled by Mr. Quin and appellant then signed this statement at the bottom of the schedule: "April 14, 1950. The above schedule represents income tax, sales tax and other tax returns held in my desk, the remittances on which had previously been detached and deposited to the credit of other accounts. These returns were voluntarily turned over to Dick D. Quin by me. Janie L. Brister, Cashier." Prior to introduction of the foregoing evidence the court conducted a preliminary investigation, in the absence of the jury, as to the voluntary character of the statements and admissions of appellant and she did not offer to testify on that point as was her privilege.

Appellant's first and principal argument for reversal is that the confession, if it may be so called, was induced by virtue of a promise of leniency which removed its

voluntary character and rendered it inadmissible. Pretermitting the question whether Mr. Quin's position was such that he had authority to make a promise of leniency, █ we are of the opinion that what he stated to appellant is not such a promise. What he said to her was not a promise that the sentence of the court would be lighter or easier on her if she would tell what she knew, but was simply a statement that if she would cooperate in the matter it would make it much easier for her and for the auditor in completing and conducting the audit. In this very connection Mr. Quin stated to her that he could uncover every dollar of the shortage but that it would be a tedious task which might extend over a period of several weeks or even months. Moreover, after the investigation was completed and the total amount of the shortage determined, appellant and Mr. Quin interviewed the Chairman of the Tax Commission and she then emphatically stated to him that there was no coercion, promise, hope of reward or immunity held out to her, and this is not denied. The statement of Mr. Quin to appellant was not calculated to produce a false confession, nor did it hold forth any worldly advantage to her. Particularly applicable to the situation here presented is 22 C. J. S., Criminal Law, Sec. 825, which says, in part: █ "The promise of a benefit to accused which will exclude a confession induced by it must have been positive in its terms or clearly implied and of such a character as would be likely to produce a false confession. Accordingly, █ it must be a promise of worldly advantage, but it is not necessary that it be of some particular and specific advantage or favor; it is enough if in general terms it suggest an advantage to be gained by the confession. Whether specific language amounts to such a promise may depend upon the circumstances in which it is used and on warrantable inferences drawn from the language and circumstances. A mere suggestion to accused that he should confess is not a promise which will exclude his confession.

"The hope of benefit which will exclude a confession must be one which another holds out to accused to elicit it."

██ ██ Furthermore, it is undisputed in this case that appellant told Quin that the tax returns which had been held out and from which remittances had been detached and used as credits on the returns of other taxpayers were in the middle drawer of her desk. She led him to the hidden returns which had never been reported to the accounting office; these returns are the principal evidence against her. Could it be possible that any supposed inducement or promise of leniency brought forth a falsehood in this respect? We think not, for the returns themselves bear witness to her guilt. As to this feature of the case we quote from Garrard v. State, 50 Miss. 147, 151:

"Hilliard further testified that some of the things were found, where Cato said they were. And the things spoken of by the witness were evidently the stolen goods taken from the store, for which Cato was then in custody and about which the examination was then being had. This was undoubtedly legitimate evidence, even though the confession may have been improperly obtained. For the object of all the care which is taken to exclude confessions which are not voluntary, is to exclude testimony not probably true. But where in consequence of the information obtained from the prisoner, the property stolen or any other material fact is discovered, it is competent to show that such discovery was made conformably to the information given by the prisoner. The statement as to his knowledge of the place where the property or other evidence was to be found, being thus confirmed by the fact, is proved to be true, and not to have been fabricated in consequence of any inducement. 1 Greenl. Ev., 262, Sec. 231."

See also Belote v. State, 36 Miss. 96, 117-118, and Smith v. State, 166 Miss. 893, 898, 144 So. 471.

 The question of the admissibility of a confession is primarily for determination by the trial judge and we are not authorized to reverse his decision thereon unless his discretion in the matter has been abused. Street v. State, 200 Miss. 226, 232, 26 So. (2d) 678, and numerous authorities there cited. Here the facts were not even in dispute and we do not find any abuse of the lower court's discretion.

 Appellant's second and last ground for reversal is the action of the court in overruling objection to certain items of evidence in the testimony of three of the state witnesses. The witness Quin had referred to the transactions here involved as being what is known in the field of accounting as a "kiting" operation. On redirect examination he was asked to explain by illustration what is meant by "kiting" and, over appellant's objection, he was permitted to do so. Appellant contends that the question was hypothetical and the answer argumentative, but we do not think either contention is well founded. The question was direct and the answer was explicit in illustrating what the term meant.

 Mr. Adcock, a field auditor for the tax commission, was interrogated as to the system of bookkeeping in the accounting department, to which objection was made and overruled, and he proceeded to explain the system of records kept by the tax commission. Complaint is made that the question was hypothetical and the answer in the field of supposition, but we do not agree with either contention. The question was direct and the answer was a statement of fact within the knowledge of the witness.

 The witness Andersen, chief accountant for the tax commission was asked whether there was any shortage when appellant became cashier in 1936; objection was made on the ground that the question called for an opinion; this objection was overruled and the witness replied that there was no shortage at that time. The answer was not an opinion but was a direct statement

of a fact based upon the witness' knowledge of the books of the commission.

We find no prejudicial error in any action of the trial court in the conduct of this case. The evidence shows without dispute and beyond any reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that the appellant is guilty as charged in the indictment. The sentence imposed was exceedingly light, and the judgment of conviction is accordingly affirmed.

Affirmed.