## MONROE v. UNITED STATES.
### No. 14615.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1954.

Rehearing Denied Oct. 11, 1954.

See also 110 F.Supp. 507.

Henry Klepak and John P. Koons, Dallas, Tex., for appellant.

William O. Braecklein, Cavett Binion, Asst. U. S. Attys., Heard L. Floore, Frank B. Potter, U. S. Attys., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and RICE, District Judge.

RICE, District Judge.

Tried to a jury and found guilty on each count of a five count indictment charging him with knowingly and wilfully attempting to evade a large part of the income taxes owing by himself and his wife for the years 1946, 1947, and 1948, in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), the defendant has appealed.

Defendant graduated from Baylor University and thereupon engaged for a time in the occupation of singing professionally. He was later employed as a field representative of General Motors Acceptance Corporation, making collections and repossessing automobiles. In May, 1942, he became a Special Agent for the Federal Bureau of Investigation

and served in that capacity substantially three and one-half years. He thereafter was employed by the Buick Motor Division of General Motors Corporation, in the capacity of district manager for Northeast Texas. He supervised the operations of some forty dealers in his territory. While so employed, and without the knowledge of his superiors, he engaged in certain lucrative extra curricular activities. Included among these was receiving money under a kickback agreement for allotting additional automobiles. For this service one dealer paid defendant $1,000.00 per month. These were cash transactions, and defendant kept cash in a safety deposit vault. He also made use of cashier's checks issued in fictitious names. He kept no books or records in reference to these outside activities.

Defendant testified that he did not report the income which accrued to him by reason of these activities because they formed no part of the business in which he was engaged; and did not realize that he should have reported this income for the years 1946, 1947, and 1948, until his superior brought it to defendant's attention while reprimanding him in April of 1948 for some of these activities which defendant's superior had just discovered.

Defendant testified that thereafter his conscience began hurting him, and that in November or December, 1948, he confided in his bookkeeper that he had not been reporting his full income for the years 1946 and 1947, and that the latter advised him to procure an accountant. In January, 1948, he did employ a firm of certified public accountants, and disclosed his problem and sought their advice. Due to his failure to keep books and records the making of a corrected amended return was impossible, and he was advised to compile from memory a list of his unreported income and said accountants would put it in his 1948 return for the purpose of notifying the government that such amount was previously unreported income. Defendant relied on and followed this advice. Defendant further testified that said accountants advised him that the filing of his 1948 return would cause an investigation of the income thus reported and that when representatives of the government came to check his returns he was to explain his situation to them and to cooperate to the fullest extent; that by so doing he would be protected by the immunity granted those making a voluntary disclosure. He further testified that on receiving this advice he finally remembered $13,000 of unreported income; and that this sum was reported as income in his 1948 return. From the record and the briefs of the parties it would appear that no explanation was incorporated in the 1948 return showing the source of this income or that it was previously unreported. There the matter lay, from the filing of the 1948 return in March 1949, with nothing further being done by defendant, until August 7, 1950, when Messrs. Klein and Robertson, Agents of the Bureau of Internal Revenue, called at defendant's place of business and requested to see the 1948 return for Monroe Buick Agency.

During the month of May, 1950, Mr. Robert W. Klein, an Agent of the Intelligence Division of the Bureau of Internal Revenue, was ordered to investigate the returns of defendant for the tax years 1946, 1947 and 1948; and on June 1, 1950, defendant's 1946 and 1947 tax returns were "physically" handed over to Mr. Klein. The latter testified that in May, 1950, in his official capacity, he had information defendant had unreported income not disclosed by his return.

Defendant further testified that on the first visit of Mr. Klein he told him that the lump sum of money ($13,000) was put in the 1948 return to cover unreported income for 1946, 1947 and 1948, under instructions of his accountant, for the purpose of notifying the government he had made unreported income. That his accountant had in-

formed him that if he made a voluntary disclosure he would not suffer any penalty or prosecution, except for not having kept books and records; that Mr. Klein did not tell him he would not be prosecuted; that he voluntarily gave the agents all the information he had and cooperated with them fully.

Agent Klein testified that during some of his discussions with the defendant the latter said he understood that when "you voluntarily disclose you did this and pay your tax the government won't prosecute you", and that he agreed with this statement.

Prior to commencement of the trial defendant filed his motion to suppress testimony, alleging in substance that relying on the advice of his accountant, and on the announced policy of the Treasury Department, which had previously come to his attention, he had taken affirmative steps to voluntarily disclose to the government that he had earned income in 1946, 1947 and 1948, a portion of which he had not reported; that before giving the specific information in regard to his disclosures he had, on his first contact with the agents for the government, informed them that his intention was to complete his already originated disclosure; inquired if those who did make voluntary disclosures were not immunized from prosecution, and was informed that such was the policy of the government; that thereafter he gave fully and freely all the information requested by the agents of the government.

This motion was carried along by the court throughout the trial of the case before it was overruled.

It seems to be undisputed that the announced policy of the Treasury Department, during the period here involved, was that a taxpayer who had failed to declare his full income and pay the tax due could escape criminal prosecution through voluntary disclosure of the deficiency only in cases where such voluntary disclosure is made before the investigation is started.

An investigation is considered to be initiated at the time an agent is assigned to the case. United States v. Levy, D.C., 99 F.Supp. 529; United States v. Weisman, D.C., 78 F.Supp. 979; United States v. Lustig, 2 Cir., 163 F.2d 85, 88; In re White, D.C., 98 F.Supp. 895; White v. United States, 5 Cir., 194 F.2d 215.

Admissions which are voluntarily made without any false promises or inducements are competent evidence against one charged with crime. In re White, D.C., 98 F.Supp. 895.

In respect to defendant's claim to immunity by reason of having made to the government a voluntary disclosure, the trial court charged the jury as set out below.[1] Defendant did not except to the giving of this charge. This charge fully covered defendant's

[1] "There has been testimony in this case regarding the Treasury Department's policy of voluntary disclosure. That is an announced policy of said department wherein the government promised immunity from prosecuting under the income tax law to any taxpayer, even the wilful violator, who informs the government that he has neglected to report taxes due and owing, if he does so fully, and before he knows he is under investigation. In connection therewith, you are instructed that if, from the evidence, you believe that the defendant in this case gave information to the Treasury Agents, believing that he was complying with the policy of voluntary disclosure, and that he gave such freely, fully and voluntarily, before he knew that he was personally under investigation, or if you have a reasonable doubt as to the same, then, in such event, you will acquit the defendant and render by your verdict not guilty.

"Now, in order to be considered voluntary, a disclosure must be made before the investigation has been initiated in the case, therefore, it is essential that I define to you the initiation of investigation. An investigation is initiated when a special agent, or internal revenue agent, or deputy collector, or other officer of the agent is assigned to a return, or returns, of a taxpayer for investigation."

contention. There was ample evidence from which the jury could have reached the conclusion that this was not a case in which government agents were seeking to trap a violator of the law into making admissions against his interest; but was more properly a case where the violator baited a trap for the government by filing in 1948 a return which made no admissions against his interest to provoke an investigation, in order that he might make a "voluntary admission" and thereby secure immunity. In any event, the effect of the jury's verdict of guilty, in view of the court's charge, was that defendant's disclosures were freely and voluntarily made and were not based on any promises of immunity.

Defendant assigns as error the trial court's refusal to give to the jury a requested charge substantially to the effect that appellant was entitled to rely on the advice of others, and that no mistaken advice or belief as to what constituted income was an offense within itself.

We refrain from discussing the propriety of this charge as applied to the facts of this case, for the reason that under all the facts the defendant would be entitled to some such instruction only as to the tax return for 1948. He at no time testified that he relied on anyone's advice as to the returns he made and filed for the years 1946 and 1947. Since the trial court sentenced the defendant on all five counts generally to serve a term of six months and pay a fine of $3,000, well below the maximum sentence of five years imprisonment and $10,000 fine which the court could have imposed under each of the counts of the indictment, the defendant's rights were not materially prejudiced.

We have carefully considered each of defendant's assignments of error and are of the opinion that none of them present reversible error, and that no such error is revealed by the record.

The judgment of the trial court is, therefore, in all things affirmed.