Milton J. HARRIS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16074.

United States Court of Appeals Fifth Circuit.

April 9, 1957.

Rehearing Denied May 8, 1957.

---

Arthur B. Cunningham, Philip T. Weinstein, Cunningham & Weinstein, Miami, Fla., for appellant.

E. David Rosen, Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of guilty and sentence following a jury verdict finding that the appellant "did wilfully and knowingly attempt to defeat and evade a large part of the income tax due and owing by him to the United States of America for the calendar year 1946 * * *."

The principal ground of appellant's appeal is the admission by the trial court, over objection, of evidence tending to show that certain deductions claimed by the taxpayer were duplicated as deductions claimed by his wholly owned corporation after the Government had, by its bill of particulars, indicated that the prosecution was based solely on the failure of the taxpayer to include a single $45,000 item of income. There are other contentions as to alleged improper admission of evidence as to prior years and incorrect charge and comments to the jury.

Soon after the indictment was returned the appellant filed his motion for a bill of particulars which the trial court granted in part.[1] It is apparent that

---

1. In view of the great stock appellant takes in the matter of the Bill of Particulars, it is necessary to point out precisely what he requested by way of particulars and what the court directed the Government to furnish.

The motion asked for particulars as follows:

"1. The nature or kind of each item and the amount of each claimed by the Government as making up the total gross income claimed by the Government to have been received by the Defendant in the year 1946.

"2. The type and amount of each deduction against the total gross income of the defendant for the year 1946, allowed in computing the alleged net income of defendant for said year;

"3. The type and amount of each deduction by defendant in his income-tax return for the year 1946, which has been disallowed in computing the alleged net income of defendant for said year;

"4. Whether it is claimed that defendant wilfully withheld or omitted from his income-tax for the year 1946, item and amount of income, and if so, the nature and kind and the amount of each claim.

"5. Whether it is claimed that defendant wilfully and knowingly deducted from his gross income for the year 1946, items which were not legally deductible, and if so, the nature and kind of such illegal deductions and amount of each such item."

The court granted the motion as to the following:

"2. That motion of defendant for bill of particulars is hereby granted, and the plaintiff, United States of America, shall submit to the defendant particulars in the following form and the substance:

"(a) The general category and amount in each general category making the gross income alleged to have been received by the defendant for the calendar year 1946;

"(b) The general category and amounts allowed or disallowed by the Government *in determining the net income which is charged against the defendant.* Included in this shall be personal expenses allowed or disallowed, stated in a general category." (Emphasis added.)

the defendant asked for and got an order requiring particulars as to the items making up the gross income and of deductions allowed or disallowed *in determining the net income which is charged against the defendant.* The court refused to require any answer from the Government as to "whether it is claimed that defendant wilfully and knowingly deducted from his gross income for the year 1946 items which were not legally deductible, and if so the nature or kind of such items." [2]

During the course of the trial there was evidence that amply authorized the jury to find that Harris individually earned and collected in 1946 a $45,000 real estate commission and that he did not include it on his personal income tax return for that year filed in Miami, Florida. The Government then produced evidence to the effect that this amount was reported on the tax return of the M. J. Harris Company, a Cleveland, Ohio corporation, which had a net loss for the year of over $39,000 (including loss carry-overs from 1944 and 1945), after including the item of $45,000. It thus became apparent that if the $45,000 item was truly income to Harris he would profit by returning it as income to the corporation, because on account of the claimed loss position of the corporation it would owe no tax on it at all.

In order to prove the element of wilfulness which is an ingredient of the offense charged, the Government undertook to prove several things that were calculated to show that this was not a mere unintentional mistake by Harris. That it was such a mistake, of course, however much it benefited him taxwise, would be a defense to the criminal proceedings if believed by the jury. It is the offer and admission of this proof that is the basis of appellant's principal attack here.

The first serious objection on the trial came when the Government sought to prove, as it did, that of the $28,714.28 of deductions claimed by Harris on his personal return, $17,605.16 of them were also claimed by the M. J. Harris Company as deductions for the same calendar year. This was proved by an analysis of Harris' personal expense sheet and of the company's expense sheet. Identical expenditures were found to have been entered on both records and were taken as deductions in the returns signed by him in one instance as an individual and in the other as president of the corporation.

The defendant vigorously assailed the action of the trial court in permitting any mention to be made of "deductions." He contended that the Government's bill of particulars admitted the deductibility of the $28,714.28 and that it would be improper for the court to permit the Government in any way to attack the validity or bona fides of a single dollar of the expenditures comprising this sum.

Upon the Government's representation that it proposed to show double deductions—once by Harris individually and once by his corporation—the court admitted the evidence solely as proof of the taxpayer's intent to defraud.

The court cautioned the jury on several different occasions that this evidence was not to be considered by them as proof of the correct amount of taxable income, but was admitted only as a circumstance to show Harris' intent in attributing the $45,000 income item to the corporation.

There is no merit in the appellant's criticism of the action of the trial court in this respect. In the first

2. The Government's response to the motion was in the following terms:
"Answering Paragraph 2 of the order as follows:
"(a) Net Gain from the Sale of Capital Assets $23,163.83
Insurance Agency Fees 710.98

Real Estate Commissions 45,000.00
(b) Operating Expenses Allowed Per Return 28,714.28
Contributions, Real Estate & Sales Taxes Allowed 814.01"

place it is to be noted that the court declined to require an answer to defendant's inquiry whether he wilfully and knowingly deducted items which were not legally deductible, but only required, as to deductions, that the Government show the amount of deductions allowed or disallowed in computing the net *income* of the taxpayer. This circumstance, of itself, was ample notice to defendant that the Government would not be precluded from attacking the defendant's alleged practice of taking the same deduction twice. This, of course, could only be shown by proof of the deductions taken, which proof the defendant objected to. Moreover, if the bill of particulars had not been granted as to only a part of the inquiries made by the defendant we are satisfied that there is no rule of law that would have prevented the Government from showing, if it could, that some of the deductions were of a highly suspicious nature, not in an effort to increase the deficiency in the tax, but to show the defendant's knowledge and thus his intent as to what he was doing when he incorrectly attributed the income item to that taxpayer which had an excess of deductions over income. There is nothing in the case of Bryan v. United States, 5 Cir., 175 F.2d 223, or the case of United States v. Neff, 3 Cir., 212 F.2d 297, relied on by appellant, contrary to what we hold here.

The Government also tendered, and appellant objected to the introduction, of testimony in the form of a statement signed by the appellant following a question and answer session with a special agent. This evidence included statements that the accused had not filed any personal income tax returns since "the thirties" because, as he stated, he had been advised by the revenue agent that if he operated all his business and paid all his personal expenses through a corporation he need file only a corporation return. The statement also included an explanation by Harris of why he split a certain payment into five parts and opened five separate bank accounts, and also an explanation that he guessed he had failed to report a large payment "because I was up to my neck in marital troubles and stayed away from Cleveland and my records." Other evidence objected to included testimony by the agent that Harris had told him this story and that he had advised Harris as to the true requirements.[3]

There was also testimony objected to by appellant to the effect that substantial disbursements, carried as deductions from income, represented payments to Harris' wife and mother-in-law and some represented payments to rare stamp dealers.

We think the court properly admitted all of this evidence for the purpose of showing the defendant's knowledge as to his obligation to return and his wilfulness in evading this obligation

3. The testimony showing that Harris had not filed any personal returns and that he was advised with respect to the need to file a personal return showing personal income follows:

"A. He [Harris] stated that his returns had been examined some time in the early thirties by an examiner whose name he couldn't recall, and who he could not identify in any way, and that he had been told inasmuch as he was operating his business through a corporation and he was the sole owner of the corporation that it would not be necessary for him to file personal income tax returns inasmuch as the corporation also paid all his personal expenses, and so he discontinued filing Form 1040, the individual tax return.

"Q. Did you have any further discussion concerning furnishing tax returns? A. Yes, I told him that whoever had told him that had obviously misinformed him, and that even though he operated as a corporation that corporation was separate and distinct from himself as an individual; that it was required of him that he file personal income tax returns, and anything the corporation disbursed for his benefit, or to him, or for him, was income to him personally and should be reported by him on an individual income tax return."

In a signed statement defendant answered agent's question as follows:

"Q. Were you aware it was taxable income? A. I never even thought of it. I made up my own income tax."

and pay income taxes. In view of his statement that he had a corporation that paid his personal expenses but that he nevertheless made no personal return, it was certainly competent for the Government to show the personal nature of some of the payments made by him to demonstrate how fantastic his claimed understanding of the law really was. Moreover, his personal return which is the basis of the indictment carried the statement that he had filed a return for the year 1945. The Government, of course, should be permitted to prove this statement to be false by showing that he had filed no personal return for 1943, 1944 or 1945, which proof defendant also objected to.

There is no merit in the appellant's criticism of the admission of the signed statement on the ground that it contained hearsay. An admission signed by the accused that is relevant to the issue being tried is, of course, an exception to the hearsay rule. While cautioning lower courts that such admissions, if a critical part of the Government's case, must be corroborated to be admissible, the Supreme Court has expressly held them admissible as an exception to the hearsay rule:

"* * * Admissions, retold at a trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross-examination. They are competent as an admission against interest." Opper v. United States, 348 U.S. 84, at page 90, 75 S.Ct. 158, at page 162, 99 L.Ed. 101.

See also Monroe v. United States, 5 Cir., 215 F.2d 81, at page 83, certiorari denied 348 U.S. 914, 75 S.Ct. 294, 99 L.Ed. 716, where we stated:

"Admissions which are voluntarily made without any false promises or inducements are competent evidence against one charged with crime. In re White, D.C., 98 F. Supp. 895."

The fact that the questions put by the revenue agent embodied statements of fact does not make the questions inadmissible, since they were made to the accused and he responded to them. Neither, of course, is there any basis for appellant's objection to the agent's testifying on the trial itself as to conversations with the accused regarding his failure to file returns for prior years. It was clearly possible for the jury to infer from the fact that Harris had stated he paid all his personal expenses out of his corporation and that he refrained from filing personal returns not because he had no taxable income, but because he didn't think he had to, that he had sufficient income during the prior years to require the filing of a personal return. Especially is this true in light of the statement that he "was making $4200 every two weeks for five weeks and I opened up a new account in five different banks because I knew each account was insured up to $5000. Then when I got the Sylvania money *I took enough* to make each of the accounts $5,000 and left the balance in the Cleveland Trust." (Emphasis added.)

It also appears on his corporate records that he paid alimony of at least $500 in 1943 and of $2400 in 1945, which he charged to fees and salaries.

All in all there is ample evidence from the statements made by the accused to the agents and from his own personal and corporate records that for the years 1943 through 1945 Harris had sufficient personal income to require him to make a personal income tax return for those years, and the proof that he did not do so is relevant and admissible to show his knowledge of his obligation and his intent to defraud the Government in defeating and evading it. We will not review at length the rule of law which permits the introduction of such evidence in a case in which intent is an ingredient of the offense charged. In Lloyd v. United States, 5 Cir., 226 F.2d 9, we reaffirmed the expression of the doctrine as set forth in the opinion on motion for rehearing in Weiss v. United States, 5 Cir., 122 F.2d 675, 682, 689, where we said:

"Let us consider the theory upon which such evidence is admissible. The general rule is that evidence of another crime unconnected with the one on trial is inadmissible, but this rule is subject to a number of exceptions, the first of which is that evidence of other offenses by the accused is admissible to show his criminal intent as to the offense charged, where the other offenses are similar to and not too remote from that charged, and where intent is in issue as an element of the offense charged. Another exception is where the evidence of a separate crime tends to explain, illustrate, or characterize the act charged when such act is capable of more than one construction. Another is to rebut a claim of mistake or inadvertence. An exception also applies where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent, or where the crime charged is part of a plan or system of criminal action. It is clearly admissible in prosecutions for obtaining money by false pretenses. The length of time over which an inquiry as to other offenses may extend is within the sound discretion of the trial court."

 We think there is no merit in the appellant's criticism of comments made by the trial judge to the jury on the two occasions on which the jury requested additional instructions. From the court's charge as a whole and in the admonition that there could be no conviction without a finding of wilful intent, we think the jury was properly and correctly advised on the function of the jury and also as to the meaning of "wilful" as used in the statute and the indictment. The voluntary addition by the court to a supplemental instruction of the statement "You can recommend as to sentence if you want to, but beyond that you cannot do anything," was not, under the circumstances of the trial, including the charge and the supplemental discussion, calculated to induce a verdict of guilty. Cf. Forster v. United States, 9

Cir., 237 F.2d 617. Moreover appellant's counsel made no objection to this comment by the court. In fact, on a reappearance of the jury seeking additional instructions when Government counsel suggested to the court that it admonish the jury that the matter of sentence was completely out of their hands, appellant's counsel objected and the court left the matter without further instructions.

If the defendant's counsel had any specific objection to the charge as to wilfulness as given it was not called to the court's attention on any of the several occasions afforded them by the court to perfect the charge. The charge as given was fair and clear and contained no prejudicial error.

The remaining points made by appellant here are, we think, not sufficiently significant to merit separate treatment. They have each been carefully considered and are rejected.

The judgment is affirmed.